IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CT-3138-BO

| | |
|---|---|
| SHAWN A. WILLIAMS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | O R D E R |
| ) | |
| JOHN HAIGWOOD, et al., ) | |
| Defendants. ) | |

Plaintiff, Shawn A. Williams, was an inmate in the custody of the North Carolina Department of Correction at the time he filed his complaint. Now before the court is a motion to stay discovery [D.E. 50] and a motion for partial judgment on the pleadings [D.E. 48]. The matter is ripe for determination.

Background

Shawn Williams filed the complaint on October 27, 2008, on pro se civil rights forms pursuant to 42 U.S.C. § 1983 [D.E. 1]. On April 9, 2009, the court allowed the matter to proceed, and entered an order of investigation [D.E. 5-6]. Thereafter, on June 15, 2009, NCPLS accepted the case [D.E. 13]. On July 14, 2009, NCPLS attorney Elizabeth Albiston entered a notice of appearance on Williams' behalf [D.E. 15] and the parties filed a joint motion for extension of time [D.E. 16]. The joint memorandum for the extension stated that NCPLS anticipated filing the amended complaint would be filed "on or before August 31, 2009" and then allowed for the answer to be filed thereafter. Id. The court allowed the extension [D.E. 17].

The amended complaint was not filed on or before August 31, 2009, it was filed on May 31, 2011 [D.E. 18]. At no time did either party inform the court of this delay or seek extensions

therefrom. After Williams filed an amended complaint, defendants sought two extensions of time to file an answer which the court allowed [D.E. 21, 23]. On August 10, 2011, defendants filed a motion to dismiss with several medical records attached [D.E. 24]. On November 15, 2011, the court construed the motion as one for summary judgment due to these attachments, denied it without prejudice given no discovery had been undertaken, and further set discovery to be completed by February 15, 2012 [D.E. 31].

Both parties sought a joint motion for extension of time to complete discovery which was allowed [D.E. 32]. During this time, the court denied a motion to strike by defendants [D.E. 41]. The parties next requested a second motion for extension of time to complete discovery and the new deadline was set for July 1, 2012 [D.E. 39]. On April 5, 2012, over three years after the commencement of this action, defendants filed their answer. On April 23-24, 2012, defendants filed a partial motion for judgment on the pleadings and a motion to stay discovery [D.E. 48-50]. Plaintiff's counsel responded to both motions. In fact, she stated she did not oppose the stay in discovery. Thus, the court must assume that the deadlines set for discovery on March 5, 2012, by court order (order allowing an extension for discovery and dispositive motions) were then not followed, given the state of the suit, and the fact that no further dispositive motions were filed on or before August 1, 2012, as required by that order.

Partial Motion for Judgment on the Pleadings

a.  Standard

The Rule 12(c) "Motion for Judgment on the Pleadings" adheres to the same standards as a motion made pursuant to Rule 12(b)(6). Burcach Broadcasting Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 405-406 (4th Cir. 2002). A Rule 12(c) motion should be granted "if,

2

after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 243-244 (4th Cir. 1999).

    b.    Factual Allegations

The court summarizes the facts using the facts of the amended complaint, which are as follows.

> Plaintiff has a history of psychiatric problems that began in his childhood and have continued into his adult life, including depression, mania, anxiety, hyperactivity, impulsivity, substance abuse, and suicidal ideation. Plaintiff has a tattoo on his left wrist consisting of a dotted line along his vein and the words "cut here."
>
> Before he entered DOC custody, Plaintiff received psychiatric and psychological treatment for his mental state for at least ten years, including receiving psychotropic medications. Plaintiff is low-income and tended to only access mental health services in emergency situations.
>
> In May 1996, at the age of fifteen, Plaintiff was court-ordered to be hospitalized at UNC Hospital for evaluation and medication following being charged with several criminal offenses. Mental health staff at UNC noted that Plaintiff was exhibiting significant manic and aggressive behavior, and transferred him to John Umstead Hospital, where he stayed for five months. The psychologist at John Umstead noted Plaintiff's recent diagnoses of Bipolar Disorder, Oppositional Defiance Disorder, and Attention Deficient Hyperactivity Disorder. Additionally, Plaintiff was diagnosed at John Umstead Hospital with Conduct Disorder and Attention Deficient Disorder. Plaintiff was successfully treated with psychotropic medications, including Depakote, Risperidone, and Dexedrine.
>
> For the years following this hospitalization, Plaintiff was treated at Alamance-Caswell Area Mental Health, where he was prescribed Depakote, Risperidone, and Lithium.
>
> In July 2004, Plaintiff was treated at Alamance Regional Medical Center Emergency Room for Bipolar Disorder and was prescribed Lithium.

3

Plaintiff has found Lithium to be extremely effective at helping him manage his psychiatric disturbances, including depressive and manic symptoms.

In October 2005, Plaintiff was admitted to DOC custody.

On March 27, 2006, Plaintiff was transferred to Hoke Correctional Institution. During the following six months, Plaintiff made three mental health referral requests to speak with mental health staff, but the mental health staff did not order an initial mental health evaluation for Plaintiff and did not refer him to a mental health counselor.

On September 21, 2006, after being at Hoke Correctional Institution for nearly six months with no mental health assessment or treatment, Plaintiff attempted suicide by slicing his left wrist with a razor blade. He received six stitches in his wrist at Hoke County Medical Center.

On or around December 20, 2006, Plaintiff was transferred to Bertie.

Plaintiff's history of Bipolar Disorder was noted on his transfer form at Bertie, and his recent suicide attempt was noted in his initial health screening.

While at Bertie, Plaintiff met with Defendant Sturz, a psychologist and the Psychological Services Coordinator at Bertie, several times a month for over a year. During these sessions, Plaintiff frequently requested mental health medications or to be transferred to a camp that administered psychotropic medications. During each session, Sturz refused to refer Plaintiff to a psychiatrist for an evaluation.

Sturz never placed Plaintiff on the mental health caseload and did not develop a treatment plan for him. Instead, Sturz relied on Plaintiff to refer himself for counseling as needed.
Sturz told Plaintiff that his problems resulted from a lack of correct religion and recommended that he put his faith in Jesus Christ. Plaintiff is Native American and told Sturz that he already had a spiritual practice. However, Sturz continued to tell Plaintiff that he needed to put his faith in Jesus Christ.

Sturz also told Plaintiff that it is the job of DOC psychologists to get and keep inmates off of psychological medications because the state is having budgetary problems.

Despite Sturz's awareness of Plaintiff's past diagnoses of various mental illnesses, past successful treatment with psychotropic medications, and recent

suicide attempt, he continued to deny that Plaintiff suffered from mental illness and did not refer him to a psychiatrist for an evaluation.

On April 19, 2007, Plaintiff told custody staff that he was going to kill himself and was placed on high-risk suicide precautions.

On June 4, 2007, Plaintiff filed Grievance No. 4880-RED-07-0065 (See Exhibit A). In the grievance, Plaintiff requested psychiatric treatment and medication to treat his bipolar disorder and described his symptoms as including mania, depression, racing thoughts, swinging sleeping and eating habits, and behavioral infractions. Plaintiff also listed institutions where he previously received psychiatric care and medications, including John Umstead Hospital, U.N.C. Hospital, Alamance Regional Medical Center, and Alamance County Jail.

On June 8, 2007, Plaintiff made a second suicide attempt by cutting his left wrist. The cut required stitches.

On June 20, 2007, less than two weeks after his second suicide attempt, Plaintiff received a response to his grievance based on a statement from Sturz informing him that psychotropic medications were not available at Bertie and that he needs to "learn self control and make more mature choices to really deal with [his] problems." (See Exhibit B).

On July 7, 2007, Plaintiff filed Grievance No. 4880-RED-07-0071 to again request psychiatric treatment and medication. Plaintiff wrote that he suffered daily and urged that someone contact John Umstead Hospital to review his medical history. (See Exhibit C). The grievance response said that the issue had already been addressed. (See Exhibit D).

On August 3, 2007, Plaintiff filed Grievance No. 5880-RED-07-0079 to attempt once again to receive treatment for his disease, writing that he has "severe depression, anxieties, variations in sleep, mood highs, and times where I seem to just crash. ... I still strain from day to day with racing thoughts – temper – and seeming inability to control myself from getting into trouble." (See Exhibit E).

On August 9, 2007, Sturz wrote in response to Plaintiff's grievance that if Plaintiff would "make better choices, his misery would begin to subside. He continues to have character problems and not mental health issues." (See Exhibit F).

. . .

Additionally, Plaintiff has been pepper sprayed, placed in physical restraints, placed in segregation, and lost gain time because of his behavior resulting from mood instability.

During March 2008, Plaintiff's sister, Jennifer Phillips, contacted Disability Rights North Carolina ("DRNC") and informed them that Plaintiff was not getting adequate treatment for his mental illness. DRNC is a non-profit Protection and Advocacy system that advocates for people with mental and physical disabilities. DRNC contacted prison officials at Bertie and advocated for Plaintiff to be transferred to Maury Correctional Institution ("Maury") for a psychiatric evaluation.

On April 4, 2008, Plaintiff was sent to Maury for a psychiatric evaluation with psychiatrist Dr. Atelat Philips. Dr. Philips prescribed Paxil for Plaintiff to alleviate his symptoms of depression and aggressive behavior problems.

On or around April 22, 2008, Plaintiff was transferred from Bertie to Warren Correctional Institution ("Warren") in order to receive psychiatric care. On May 9, 2008, Dr. Charles Vance, a psychiatrist at Warren, diagnosed Plaintiff with Depressive Disorder Not Otherwise Specified, Polysubstance Abuse, and Antisocial Personality Disorder. Dr. Vance prescribed Depakote to target Plaintiff's volatility, impulsivity, and poor anger management. On September 17, 2008, Dr. Vance switched Plaintiff's medication from Depakote to Lithium.

From April 2008 to the present, Plaintiff has been receiving psychiatric treatment while in DOC custody. He is currently taking the anti-depression medication Celexa, the bipolar medication Lithium, and the anti-psychotic medication Loxitane and is experiencing significant relief.

[DE. 18, Amended Complaint, 3-6].

    c.    Grounds for Dismissal

Defendants argue as grounds for dismissal: 1) that the medical negligence claim is barred by the statute of limitations, and 2) that the medical negligence claim fails to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Defendants do not take issue with the Eighth Amendment claim for deliberate indifference to a serious medical condition within this motion, but simply argue that the court has failed to rule on the issue of qualified immunity

which they state was raised in the first motion to dismiss and in their answer. [D.E. 51, Mem in Supp. of 12(c) Mot., p. 3-4]. Thus, they also contend they have the right to avoid discovery. [Id.]

i) Statute of Limitations

Defendants argue that "[i]f the Court determines that the original complaint did not set forth a plausible claim for medical malpractice, then the Second Claim for Relief of the Amended Complaint was filed outside the applicable statute of limitations, such that it is time barred." (citations omitted)

The original complaint was filed pro se. Pro se litigants are entitled to liberal construction of their pleading. Haines v. Kerner, 404 U.S. 519, 520, (1972). Furthermore, district courts are to determine the true nature of a pleading by its substance, not its label. Armstrong v. Capshaw, Goss & Bowers, LLP, 404 F.3d 933, 936 (5th Cir. 2005); see also Edwards v. City of Houston, 78 F.3d 983, 995 (5th Cir.1996) (en banc) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label'") (quotation omitted).

Plaintiff states in his original complaint that he suffers from Bipolar - Manic Depressive Disorder and has been in several medical institutions for treatment throughout his life. [Compl., Statement of Claim]. He also states that he has had long term treatment with medication for his mental illness. [Id.] After his arrest on or about September 2005, he sought mental health care and treatment, but he "was denied his medication causing him a great level of stress, anxiety, [illegible] judgement and anger." [Id.] He states that he continued to request medication for his bipolar disorder at every correctional facility to which he was transferred. [Id.] He states that his request was repeatedly denied by the staff psychologist, including the psychologist at Hoke

Correctional, based on the cost of such medication. [Id.] While in Bertie Correctional, he states that psychologist Joe Sturz stated the medication would not be administered due to budgetary constraints and plaintiff's failure to "put his faith in Jesus Christ." [Id.].[1]

Plaintiff states he his severe depression, suicidal thoughts, manic mood swings, excessive disciplinary infractions were caused or exacerbated by his untreated mental state. [Id.]. He states that due to the continued preclusion from proper medical and mental health care and treatment he attempted suicide twice by cutting his wrists, once at Bertie Correctional and once just prior to his arrival at Bertie and about which defendants were aware. [Id.] He states that this behavior occurred due to the "fault of the defendants named herein and their neglect." (emphasis added). Construing the allegations liberally, plaintiff states both a claim for deliberate indifference to serious medical conditions, as well as, a state tort negligence claim. Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002) (citations omitted) ("Actionable negligence occurs when a defendant owing a duty fails to exercise the degree of care that a reasonable and prudent person would exercise under similar conditions, or where such a defendant of ordinary prudence would have foreseen that the plaintiff's injury was probable under the circumstances.")

It is clear that North Carolina's three-year statute of limitations for personal injury actions governs medical malpractice claims brought under N.C.G.S. § 90-21.12. N.C.G.S. §§ 1-52(16); 90-21.12 (2010); see Watson v. Price, ___ N.C. App. ___, 712 S.E.2d 154, 154 n.1 (2011).

---

[1]Defendants John Haigwood, William R. Favret, and John T. Bullock were voluntarily dismissed pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure after the Amended Complaint was filed. [D.E. 19]. Thus only the two defendants from Bertie Correctional remain in the action.

8

Under North Carolina law the statute of limitations for medical malpractice actions runs from the time the cause of action accrued. N.C.G.S. § 1-15(c). Defendants do not argue that the original Complaint is outside the statute of limitations, but that the amended complaint is time-barred. Defendants contend that the date to use in calculating the statute is April 22, 2008, the last date on which Sturz, the psychological coordinator at Bertie Correctional, could have treated plaintiff. (D.E. 49, p. 8 citing D.E. 18, Amended Complaint, ¶ 43). Thereafter, plaintiff was transferred from Bertie to Warren Correctional Institution. [Id.].

However, Federal Rule of Civil Procedure 15(c)(1)(B) ("Rule 15(c)") provides that an amendment to a pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B)(2010) (emphasis added); see N.C.R. Civ. P. 15(c). The Fourth Circuit has held that the purpose of Rule 15(c) is to make certain:1) there is a factual nexus between the amendment and the previous pleading, and 2) defendants have adequate notice of new claims such that they will not suffer prejudice if the amendment is found to relate back. See, e.g., Goodman v. Praxair, Inc., 494 F.3d 458, 469-70 (4th Cir. 2007) (en banc); Grattan v. Burnett, 710 F.2d 160, 163 (4th Cir. 1983); Davis v. Piper Aircraft Corp., 615 F.2d 606, 614 (4th Cir. 1980).

Here, plaintiff's medical malpractice claim set forth in his Amended Complaint arises out of the conduct, transactions, and occurrences described in his original Complaint. Both complaints state defendant Sturz failed to properly treat plaintiff's mental illness during his time at Bertie Correctional Institution. Both state that the emotional, psychological, and physical harm that resulted from this failure (including plaintiff's June 8, 2007 suicide attempt) were

9

caused by Sturz' failure or negligence to provide proper medical care. The factual nexus between the two complaints is the same. Additionally, Defendant Sturz has not claimed that he will suffer any prejudice if the medical malpractice claim is found to relate back. Laber v. Harvey, 438 F.3d 404, 427 (4th Cir. 2006). ("An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.") Thus, plaintiff's medical malpractice claim as set forth in his amended complaint relates back to his original complaint and is not barred by the statute of limitations, and the court denies defendants' motion for judgment on the pleadings on this ground..

Lastly, the court notes that defendants signed the joint motion for time to file an amended complaint. The parties then failed to file the amended complaint by the deadline they set out in their motion, and did nothing for over 21 months. While this is not conclusive of the matter, the court has great concern about seeking an extension of time to file the amended complaint and answer, failing to file it within that time period, and then asserting a bar due to the running of the statute of limitations for this period of time. While, plaintiff was clearly required to file the amended complaint, defendants agreed to the filing and were complicit in the inexcusable time lapse between the Complaint and Amended Complaint.

    ii)    9(j)

Defendants also seek dismissal of any negligence claim for failure to comply with North Carolina's pre-filing requirement Rule 9(j). In North Carolina there are substantive legal requirements that a person must follow to pursue a medical malpractice claim. A plaintiff asserting negligence must prove the existence of a legal duty or standard of care owed to the plaintiff by the defendant, breach of that duty, a causal relationship between the breach of duty

10

and the plaintiff's alleged injuries, and certain actual injury or loss sustained by the plaintiff. Camalier v. Jeffries, 340 N.C. 699, 706 (1995); Blackwell v. Hatley, 688 S.E.2d 742, 746 (N.C. Ct. App. 2010).

North Carolina Rule of Civil Procedure 9(j) states in relevant part:

Any complaint alleging medical malpractice by a health care provider as defined in [N.C. Gen. Stat. §] 90-21.11 in failing to comply with the applicable standard of care under [N.C. Gen. Stat. § ] 90-21.12 shall be dismissed unless:

> (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry[2] have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;
>
> (2) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or
>
> (3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

N.C. R. Civ. P. 9(j) (2010).

---

[2]North Carolina Session Law 2011-400 § 3 amended Rule 9(j) to include a requirement that the potential expert witness review not just "all medical care," but "all medical records pertaining to the alleged negligence that are available to plaintiff after reasonable inquiry." This amendment applies only to cases commenced on or after October 1, 2011. Plaintiff's action was commenced before that date and does not apply.

Failure to comply with Rule 9(j) is ground for dismissal of a state medical-malpractice claim filed in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt. Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676-77 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713-14 (E.D.N.C. 2001). "Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements." Barringer v. Forsyth County Wake Forest Univ. Baptist Med. Ctr., 197 N.C. App. 238, 255, 677 S.E.2d 465, 477 (2009). Furthermore, plaintiff's status as a prisoner does not excuse his failure to comply with Rule 9(j)'s pre-filing certification requirements. See, e.g., Smith v. United States, No. 1:08cv838 (LO/JFA), 2010 WL 256595, at *3 n.5 (E.D. Va. Jan. 19, 2010) (unpublished).

Plaintiff's amended complaint sets forth a claim for medical malpractice. [Am. Compl., ¶¶ 2, 4, 47-50, Ex G]. In compliance with N.C. R. Civ. 9(j), Dr. Ginger Calloway states she has reviewed plaintiff's medical care and is willing to testify that the medical care did not comply with the applicable standard of care. [D.E. 18, Calloway Aff.]. Plaintiff agrees that the original complaint did not comply with Rule 9(j). However, plaintiff asserts the complaint alleges only a federal civil rights claim and this court found that it alleged a general negligence claim.[3] Neither of these claims, a North Carolina law general negligence claim or a 42 U.S.C. § 1983 civil rights action, requires 9(j) affidavits.

In this matter, the court finds plaintiff is not trying to cure a defect in the original complaint. This would be precluded by Thigpen v. Ngo, 355 N.C. 198, 355 S.E.2d 162 (2002),

---

[3] The general state negligence claim appears to have been abandoned.

12

in which the North Carolina Supreme Court held one cannot cure a Rule 9(j) deficiency in a medical malpractice complaint by filing an amended complaint with expert certification that fails to allege that the review took place before the original complaint was filed. Thigpen, 355 N.C. at 204, 355 S.E.2d at 166. Thigpen is inapplicable to this case. Plaintiff, pro se and thus construing his complaint liberally, filed a civil rights claim under 42 U.S.C. § 1983 and a general negligence claim. Through counsel he filed an amended complaint which included a medical negligence claim. Prior to filing the amended complaint plaintiff, through counsel, secured the affidavit of an expert witness.

Defendants assert, in their reply, that this result has been "squarely rejected" by Keith v. Northern Hosp. Dist. of Surry County, 129 N.C. App. 402, 499 S.E.2d 200 (1998), discretionary review denied, 348 N.C. 693, 511 S.E.2d 646 (1998). Again the court in that case dealt with a suit which was filed as a medical malpractice suit. Id. at 403. The answer sought dismissal based on the failure to comply with 9(j). Id. Thereafter, plaintiff filed a motion to amend the compliant to comply with 9(j). Id.

The North Carolina Court of Appeals found that a plaintiff's "'file first, review later, relate back'" argument would return us . . . to the filing of malpractice actions before the plaintiff had ascertained the existence, in fact, of the expert opinion evidence necessary to establish a breach of the applicable standard of care." Id. at 405-406, 499 S.E.2d at 202. Again, this is not the case here. First, plaintiff, pro se, did not file a frivolous medical malpractice claim. Plaintiff filed a 42 U.S.C. § 1983 claim along with a general state-law negligence claim. Furthermore, on April 9, 2009, by order of this court, it was held the complaint was not clearly frivolous pursuant to 28 U.S.C. § 1915(e)(2). Lastly, the Keith decision found that the plaintiff did "not seek to

13

assert a new claim in its amended pleadings and thus is not permitted to take advantage of the 'relation back' doctrine [of Rule 15(c)." Id. Here, plaintiff does state a new and separate claim and may employ Federal Rule of Civil Procedure 15(c). Thus the court denied defendants' motion to dismiss on this ground.

    iii.    Qualified Immunity

Lastly, the court addresses defendants' argument that they are entitled to qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. 223, 236-238 (U.S. 2009); Siegert v. Gilley, 500 U.S. 226, 232 (1991); Rogers, 249 F.3d at 286.

The constitutional protection at issue here is one's Eighth Amendment right to protection from deliberate indifference to a serious medical condition. The Supreme Court has set out a two-part inquiry to determine whether prison officials' conduct violated their duty under the Eighth Amendment to provide humane conditions of confinement. Wilson v. Seiter, 501 U.S. 294, 303 (1991) ("[W]e see no significant distinction between claims alleging inadequate medical care and those alleging inadequate 'conditions of confinement.' Indeed, the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the

14

clothes he is issued, the temperature he is subjected to in his cell."); Williams v. Braker, 462 Fed. App'x 348, 353 (4th Cir. 2012).

"The first part of the inquiry asks whether the conditions of confinement inflict harm that is, objectively, sufficiently serious to deprive a prisoner of minimal civilized necessities." Williams, 462 Fed. App'x at 353 (citing Wilson at 834). "The second part of inquiry asks whether prison officials subjectively acted with 'deliberate indifference to inmate health or safety,' meaning that they actually knew of and disregarded the inhumane nature of the confinement." Id. "For an allegation of inadequate medical care to support an Eighth Amendment claim there must be 'neglect of 'serious' medical needs.'" Id. (quotations omitted).

In the case before the court, and in construing the facts most favorably for plaintiff, he was arrested and incarcerated. After his arrest, he continually sought medical treatment for his mental health issues. He explained to staff and medical professionals his significant history of psychiatric treatment, and the pressures and anxieties under which he now felt himself. He explained that he had suicidal thoughts. While incarcerated he attempted suicide at least twice along with displaying a myriad of other serious behavior issues.

At Bertie, plaintiff spoke with defendant Sturz, the DOC psychologist, several times a month for over a year. The staff at the Bertie facility put plaintiff on suicide watch, but denied him medication. On June 20, 2007, less than two weeks after his second suicide attempt, plaintiff received a response to one of his grievances based on a statement from Sturz informing him that psychiatric medications were not available at Bertie and that he needs to "learn self control and make more mature choices to really deal with [his] problems." Sturz told plaintiff that his problems resulted from a lack of correct religion and recommended that he put his faith

in Jesus Christ. Dr. Sturz made additional recommendations in keeping with these throughout plaintiff's incarceration at Bertie including denial for budgetary restraint reasons.

Plaintiff's sister contacted DRNC and informed them that plaintiff was not getting adequate treatment for his mental illness. DRNC contacted prison officials at Bertie and advocated for plaintiff to be transferred.

From the proffer of evidence by plaintiff both prongs have been met. Clearly, the denial of medical care was objectively, sufficiently serious and done with deliberate indifference, i.e. actual knowledge. Absent discovery and a more complete record, qualified immunity does not protect defendants.

Conclusion

The motion for partial judgment on the pleading is DENIED [D.E. 48]. The motion for a stay of discovery pending ruling on the motion for partial judgment on the pleadings is likewise DENIED [D.E. 50]. The discovery order of March 5, 2012, is modified to reflect that all discovery shall be completed by October 28, 2012. Reports from the retained experts shall be due from plaintiff by October 14, 2012, and from defendants by November 14, 2012. All dispositive motions shall be submitted by December 1, 2012. There will be no further extensions absent exceptional circumstances.

SO ORDERED, this the 25 day of September 2012.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE